Carroll,
March 1, 1938.

GEORGE B. PROCTOR

*v.*

ARTHUR H. FROST, *Adm'r, and Individually.*

*Demond, Woodworth, Sulloway, Piper & Jones (Mr. Franklin Hollis* orally), for the plaintiff.

*Cooper & Hall (Mr. Cooper* orally), for the defendant.

BRANCH, J. The plaintiff does not seriously question the soundness of the rule that "the validity and effect of a mortgage on land is determined by the law of the State where the land is." American Law Institute, Restatement of Conflict of Laws, *s.* 225. We think that this rule is well established and that the effect of the deed in

question must be determined in accordance with New Hampshire law. What that law is with reference to a conveyance of New Hampshire real estate executed in another jurisdiction by a married woman there domiciled, as surety for her husband, has never been specifically decided. The applicable language of the statute quoted below is not free from ambiguity, but it is to be given such effect as the legislature intended. The provision here involved reads as follows. "No contract or conveyance by a married woman, as surety or guarantor for her husband, nor any undertaking by her for him or in his behalf, shall be binding on her, except a mortgage releasing her right of dower and homestead." P. L., c. 288, s. 2. It is the contention of the defendant that, as a consequence of this enactment, "such contracts and conveyances are void because of lack of capacity."

Obviously there is in the above quoted language no legislative declaration that contracts and conveyances of the kinds described shall be "void." In this respect our statute differs from the one construed by the Indiana court in *Swank* v. *Hufnagel*, 111 Ind. 453, a case which lends support to the defendant's position. The statute there involved specifically provided that "a married woman shall not enter into any contract of suretyship . . . and such contract, as to her, shall be void." Ind. Rev. St. (1881), s. 5119.

There is also much force in the argument of the plaintiff that the language above quoted is inappropriate for the creation of a statutory incapacity. As an original question the plaintiff's contention that the effect of this language was simply "to give her an election not to be bound by such a contract when it came to be enforced against her" would, we think, deserve acceptance. The earlier decisions of this court, however, seem to preclude its acceptance at this time.

The language in question appears to have been first construed in 1880, in the case of *Buss* v. *Woodward*, 60 N. H. 58. It was there said by *Doe*, C. J., "This chapter is entitled 'An act to remove the disabilities of married women'; but, so far as it applies to this case, it is a disabling act, imposing a new protective incapacity." The limitation upon the scope of this decision contained in the words "so far as it applies to this case" may be regarded as of great significance. Later cases reiterate the statement that the statute creates an incapacity in a married woman to become a surety for her husband. *Farmington National Bank* v. *Buzzell*, 60 N. H. 189; *Parsons* v. *McLane*, 64 N. H. 478, 479. All of these cases, however, involved contracts or conveyances made by married women in New Hamp-

shire and the language used in the opinions has no reference to the factual situation disclosed in the present case.

In *Farmington National Bank* v. *Buzzell, supra,* no conveyance of land was involved. The action was upon two promissory notes signed by husband and wife and it was with reference to the wife's contract of suretyship embodied in these notes that the court said, "Mrs. Buzzell did not possess the capacity to make this contract." With reference to the note secured by the mortgage now in question, this language would be erroneous. Mrs. Frost's capacity to execute this note was determined by the law of Massachusetts where it was executed, and by that law she was fully competent to make it. It thus clearly appears that the language used in the decisions above referred to must be read in the light of the facts then under consideration. Thus construed they seem to establish the rule that a married woman acting in New Hampshire has no capacity to make a binding contract of suretyship for her husband or to make a valid conveyance of New Hampshire real estate as security for his obligations.

The primary purpose of the statute as thus interpreted was not to regulate the transfer of New Hampshire real estate but to protect married women in New Hampshire from the consequences of their efforts, presumably ill-advised, to reinforce the credit of embarrassed husbands. Its effect was to create "a protective incapacity" personal to them. Nothing is said either in statute or decision in regard to the capacity of married women outside of New Hampshire to make contracts or conveyances. This distinction between "a law which operates directly on such property, as distinguished from one which operates on the person" (Note: Capacity of Married Women, 18 A. L. R. 1555) is believed to be important in determining the effect of the statute here involved.

Undoubtedly the legislature has power to provide that a conveyance of New Hampshire real estate by a married woman as surety for her husband, wherever executed, shall be null and void. It is equally obvious that the present statute is not framed in appropriate language to accomplish this result. The defendant's argument is, in effect, that it was intended to accomplish the same thing by indirection. The language of the act fits poorly with this argument. "No contract or conveyance . . . shall be binding on her." Her contracts and conveyances are dealt with in identical terms and no indication is given that the same form of words was intended to have one effect with reference to contracts and another with reference to conveyances. In regard to contracts, the only ones which can be locally

controlled are those which are locally executed and it will not be presumed that the legislature intended to pass a law with reference to matters over which it has no control. "As a consequence of the equality and sovereignty of states in respect to each other, the laws of a state must presumptively be taken as intended for the government only of persons and things within its territory." *Merrill* v. *Railroad*, 63 N. H. 259, 265. Our legislature has no authority to tell Massachusetts women what contracts they shall not make and no intention to make the attempt will be imputed to it.

Since the provision in regard to contracts was intended to affect only contracts of married women made in New Hampshire, the identical provision in regard to conveyances is construed to be similarly limited. The fact that the legislature might properly regulate the conveyance of New Hampshire lands in a statute dealing with that subject, furnishes no reason for giving such an effect to a statute dealing with a different subject-matter, *i. e.* the protection of married women in New Hampshire.

Our conclusion, therefore, is that the legislature has not attempted, in the statute under consideration, to affirm or deny the capacity of married women to make contracts or conveyances except when such transactions take place in this state. In the absence of such legislation it is a necessary conclusion that the capacity of a married woman with reference both to contracts and conveyances shall be determined by the law of the place where they are executed. This is the New Hampshire rule which determines the validity of the mortgage in question. Since under the law of Massachusetts Mrs. Frost had capacity to execute that mortgage, there was error in the order dismissing the plaintiff's bill.

*Exceptions sustained.*

Page, J., dissented: the others concurred.